of maintenance, and thus there was no basis for the court to deduct maintenance from defendant's income in determining the amount of child support (cf. *Schiffer v Schiffer*, 21 AD3d 889, 890-891 [2005]; *Kessinger v Kessinger*, 202 AD2d 752, 753-754 [1994]). We further conclude that, although defendant testified at trial that his current earnings were less than his earnings from the previous year, the court did not abuse its discretion in using his income from the previous year to calculate child support. Defendant failed to provide a consistent explanation for the decrease in his income from his employment at his family's business.

Contrary to defendant's further contention, the court did not abuse its discretion in awarding maintenance to plaintiff of $1,000 a month for a period of four years (see *McCarthy v McCarthy*, 57 AD3d 1481, 1481-1482 [2008]). "[T]he amount and duration of maintenance are matters committed to the sound discretion of the trial court" (*Boughton v Boughton*, 239 AD2d 935, 935 [1997]). Here, the court considered all the factors set forth in Domestic Relations Law § 236 (B) (6) (a), and properly balanced plaintiff's reasonable needs against defendant's ability to pay (see *Torgersen v Torgersen*, 188 AD2d 1023, 1024 [1992], *lv denied* 81 NY2d 709 [1993]).

The court properly awarded plaintiff a credit for her separate property interest in the marital residence in the amount of $25,000. "It is well settled that a spouse is entitled to a credit for his or her contribution of separate property toward the purchase of the marital residence" (*Juhasz v Juhasz*, 59 AD3d 1023, 1024 [2009], *lv dismissed* 12 NY3d 848 [2009]; see *Hendershott v Hendershott*, 299 AD2d 880, 880-881 [2002]; *Judson v Judson*, 255 AD2d 656, 657 [1998]). The uncontroverted evidence established that plaintiff used $25,000 that she received from her mother as a down payment for the marital residence. We have considered defendant's remaining contentions and conclude that they are without merit. Present—Scudder, P.J., Centra, Fahey and Peradotto, JJ.

■ COLLEEN O'BRIEN, Respondent-Appellant, v LARRY J. BAINBRIDGE et al., Appellants-Respondents. (Appeal No. 1.) [932 NYS2d 747]—

Same memorandum as in *O'Brien v Bainbridge* (89 AD3d 1511 [2011]). Present—Scudder, P.J., Centra, Fahey, Peradotto and Lindley, JJ.

■ COLLEEN O'BRIEN, Respondent-Appellant, v LARRY J. BAINBRIDGE et al., Appellants-Respondents. (Appeal No. 2.) [932 NYS2d 785]—

Memorandum: Plaintiff commenced this action seeking damages for injuries she sustained when the United States Postal Service vehicle she was driving was broadsided at an intersection in the City of Buffalo by a delivery truck owned and operated by defendant Larry J. Bainbridge pursuant to a contract for package delivery with defendant FedEx Ground Package System, Inc. In appeal No. 1, defendants appeal and plaintiff cross-appeals from an order denying defendants' motion for summary judgment dismissing the complaint on the ground that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) and denying plaintiff's cross motion for partial summary judgment on the issue of serious injury. We note at the outset that, in her original bill of particulars, plaintiff alleged that she sustained four categories of serious injury, i.e, the significant disfigurement, permanent loss of use, significant limitation of use and 90/180-day categories. In her amended bill of particulars, however, which predates Supreme Court's decision in appeal No. 1, plaintiff added the category of permanent consequential limitation of use. In its written decision underlying the order in appeal No. 1, the court addressed only the initial four categories in denying defendants' motion, but did not address the additional fifth category. Thus, the permanent loss of use category remained intact despite the